2001-NMCA-061

29 P.3d 1071

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**David FOXEN, Defendant–Appellant.**

No. 21,172.

Court of Appeals of New Mexico.

June 29, 2001.

Certiorari Denied, No. 27,051,
Aug. 17, 2001.

*OPINION*

ALARID, Judge.

{1} Defendant David Foxen appeals from his convictions for aggravated battery with a deadly weapon, contrary to NMSA 1978, § 30-3-5(C) (1969), and intimidation of a witness, contrary to NMSA 1978, § 30-24-3 (1997). Defendant challenges the sufficiency of the evidence to support the convictions, as well as the adequacy of the jury instructions on the subject of self-defense. We conclude that the deficiencies in the jury instructions resulted in fundamental error, and therefore reverse and remand for a new trial. Because Defendant would be entitled to dismissal of the charges against him if we were to find in his favor regarding the sufficiency of the evidence, we also address that issue, and finding no error, affirm in that regard.

*BACKGROUND*

{2} On the evening of January 28, 1998, Defendant and two house mates, Scott Hamilton and Frankie Jackson, visited several bars. In the course of the evening Defendant and Jackson came to blows twice, the second confrontation resulting in Jackson's hospitalization.

{3} The first altercation took place in the parking lot of a bar called My Way. The accounts differ. Defendant testified that, after words were exchanged, Jackson advanced on him with a crescent wrench, which he dropped before attacking, threatening to gouge Defendant's eyes out. By contrast, Jackson testified that Defendant was the aggressor, smacking him on the head when they arrived at My Way, dragging him out of the vehicle in which they were traveling, and falling on him in the parking lot, forcefully biting Jackson's finger before they separated.

{4} The second altercation took place an indefinite period of time later, upon Defendant and Jackson's return to their residence. Again, the accounts differ. Defendant testified at trial that the fight began when he told Jackson he wanted Jackson out of the residence. Jackson allegedly responded by striking Defendant in the mouth and throwing him into the street in front of an oncoming car. Defendant further testified that

Patricia A. Madrid, Attorney General, Joel Jacobsen, Assistant Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Samantha J. Fenrow, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

Jackson threw him against the house, and then the two wrestled on the ground for a period before the fighting subsided. Defendant stated that he feared for his life in the course of the confrontation, and that he thought Jackson was trying to do him severe harm. Acknowledging that Jackson's back was cut, Defendant testified that the injuries must have resulted from coming into contact with glass or auto parts that were strewn about the area in which they were fighting. By contrast, Jackson testified that Defendant was the aggressor, threatening him and pushing him into the street before grabbing him in a choke hold and stabbing him twice in the back with an eight-inch, partially-serrated knife.

{5} Two witnesses to the second altercation, a next door neighbor and a passing motorist, called the police. When the officers arrived, Defendant told them that he and Jackson had just been "jumped by four Mexicans." Jackson was taken to the hospital, where he initially gave an account similar to Defendant's story. Later, however, Jackson abandoned that position when he learned that several witnesses' statements contradicted his account. At trial, Jackson testified that Defendant invented the story about the "Mexicans," and that he went along with that story because Defendant called him at the hospital and threatened to kill him if he did not cooperate. Another witness for the State also testified in regard to this threat, stating that she was visiting Jackson in the hospital when Defendant called, and that she heard Defendant threaten Jackson's life if he reported what actually happened. Defendant, in turn, testified that the story was Jackson's idea, and denied making any threatening phone call.

{6} Among the instructions to the jury were two addressing the law of self-defense. The first of these instructions, on the elements of aggravated battery, was precisely as requested by defense counsel, and provided as follows:

For you to find the defendant guilty of Aggravated Battery With a Deadly Weapon, as charged in Count 1, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant unlawfully stabbed Frankie Jackson with a knife;

2. The defendant intended to injure Frankie Jackson;

3. This happened in New Mexico on or about the 28th day of January, 1998.

The second instruction, exclusively addressing self-defense, provided:

Evidence has been presented that the defendant acted while defending himself.

The Defendant acted in self-defense if:

1. There was an appearance of immediate danger of death or great bodily harm to the defendant as a result of the incident; and

2. The defendant was in fact put in fear, by the apparent danger, of immediate death or great bodily harm and he protected himself because of that fear; and,

3. The apparent danger would have caused a reasonable person in the same circumstances to act as the defendant did.

In considering this defense, and after considering all the evidence in the case, if you have a reasonable doubt as to the defendant's guilt, you must find him not guilty.

{7} Defendant now maintains that these instructions were fundamentally flawed because they failed to clearly indicate that the State bore the burden of proving that he did not act in self-defense when inflicting Jackson's injuries. Because Defendant did not object to the instructions, we review only for fundamental error. *State v. Cunningham*, 2000–NMSC–009, ¶ 8, 128 N.M. 711, 998 P.2d 176. Defendant also argues that there was insufficient evidence to support either of his convictions. We review each of these contentions in turn.

*DISCUSSION*

1. *Jury Instructions*

{8} Two features distinguish the jury instructions, as given in this case, from the Uniform Jury Instructions (UJIs) currently

in use. First, with regard to the aggravated battery instruction, an additional element, "[t]he defendant did not act in self defense," is to be included. *See* UJI 14–322 NMRA 2001, Use Note 6 and UJI 14–5183 NMRA 2001, Use Note 1. Defendant correctly observes that the instruction actually given incorporated only the "unlawfulness" element, omitting the element expressly addressing absence of self-defense. Second, with regard to the self-defense instruction, the final lines of the applicable UJI provide that: "[t]he burden is on the state to prove beyond a reasonable doubt that the defendant did not act in self[-]defense. If you have a reasonable doubt as to whether the defendant acted in self[-]defense, you must find the defendant not guilty." UJI 14–5183. No such explicit statement concerning the burden of disproving self-defense was included among the instructions in this case.

{9} A number of relatively recent cases address deficient jury instructions where self-defense is at issue. *See, e.g., Cunningham*, 2000–NMSC–009, ¶¶ 8–9, 128 N.M. 711, 998 P.2d 176; *State v. Sosa*, 1997–NMSC–032, ¶¶ 26–31, 123 N.M. 564, 943 P.2d 1017; *State v. Loera*, 1996–NMSC–074, ¶ 13, 122 N.M. 641, 930 P.2d 176; *State v. Parish*, 118 N.M. 39, 42–46, 878 P.2d 988, 991–95 (1994); *State v. Armijo*, 1999–NMCA–087, ¶¶ 11–27, 127 N.M. 594, 985 P.2d 764; *State v. Acosta*, 1997–NMCA–035, ¶ 9, 123 N.M. 273, 939 P.2d 1081. However, these authorities are all distinguishable from the present case insofar as they all address situations in which unlawfulness has been omitted from an elements instruction. Although this distinction is significant, the authorities agree upon a basic premise which is critical for the present purposes: namely, that jury instructions must inform, "in no uncertain terms," that the State bears the burden of disproving self-defense. *Armijo*, 1999–NMCA–087, ¶¶ 21, 25–26, 127 N.M. 594, 985 P.2d 764. Failure to so inform the jury constitutes fundamental error. *Id.*

■ {10} Turning to the case at hand, we hold that the instructions submitted to the jury do not satisfactorily perform this function. Neither the elements instruction, which places the burden of proof on the State

but fails to incorporate clear reference to self-defense, nor the subsequent self-defense instruction, which omits any mention of the burden of proof, conveys the necessary information. It is this combination of defects which results in fundamental error. *Cf. Cunningham*, 2000–NMSC–009, ¶¶ 17, 20, 128 N.M. 711, 998 P.2d 176; *Acosta*, 1997–NMCA–035, ¶ 9, 123 N.M. 273, 939 P.2d 1081. If either the self-defense instruction had set forth the State's burden, or the aggravated battery instruction had clearly provided that absence of self-defense was an element upon which the State bore the burden of proof, the instructions should have withstood fundamental error scrutiny. *E.g., Cunningham*, 2000–NMSC–009, ¶ 17, 128 N.M. 711, 998 P.2d 176; *Armijo*, 1999–NMCA–087, ¶¶ 21, 25–26, 127 N.M. 594, 985 P.2d 764, *supra* (both holding that a clear statement on the burden of proof in the self-defense instruction adequately informed the jury, despite failure to specify that unlawfulness or absence of self-defense was an element of the offense). However, as actually provided to the jury in this case, the instructions failed to clearly set forth the State's burden with regard to the assertion of self-defense, rendering those instructions confusing or misleading and resulting in fundamental error. *Cf. State v. Mascareñas*, 2000–NMSC–017, ¶ 17, 129 N.M. 230, 4 P.3d 1221 (observing that review for fundamental error entails determination whether " 'a reasonable juror would have been confused or misdirected' by the jury instructions provided.").

{11} The State urges that the reference to "unlawfulness" in the elements instruction clarifies the ambiguity created by the incomplete self-defense instruction, thereby satisfactorily informing the jury about the State's burden of proof. We acknowledge that this position finds indirect support, *see Armijo*, 1999–NMCA–087, ¶¶ 25–26, 127 N.M. 594, 985 P.2d 764, but remain unpersuaded. The instructions provide no indication as to the relationship between unlawfulness and self-defense, and we believe it unreasonable to anticipate that a jury would arrive at such an understanding. Parenthetically, we observe that precisely this problem precipitated the 1997 amendment to the UJIs. *See* UJI 14–5183, Use Note 1. Therefore, we conclude

that informing the jury about the State's burden with regard to unlawfulness cannot be said to provide similar information about its burden with regard to self-defense. *Cf. Armijo,* 1999–NMCA–087, ¶¶ 21–22, 127 N.M. 594, 985 P.2d 764 (observing that "[t]he important point is to make sure the jury knows, in no uncertain terms, to what the State's burden applies" and questioning the usefulness of instructing a jury on "unlawfulness" without relating that concept to self-defense).

{12} The State also argues that the deficiencies in the instructions should be classified as "invited error," insofar as defense counsel actually submitted the erroneous instructions. However, the record and briefs affirmatively establish only that defense counsel submitted the deficient aggravated battery instruction; it is unclear how the district court arrived at the self-defense instruction. As a result, only a portion of the complete problem may have been "invited." Moreover, even if we were to assume that defense counsel played a part in formulating the faulty self-defense instruction, we do not regard this as an appropriate case for the application of the invited error doctrine. The courts of this State have declined to address assertions of fundamental error in regard to deficient jury instructions where the instructions were submitted by the complaining party in furtherance of some deliberate trial tactic. *E.g., State v. McCrary,* 100 N.M. 671, 675, 675 P.2d 120, 124 (1984); *State v. Young,* 117 N.M. 688, 690, 875 P.2d 1119, 1121 (Ct.App.1994); *State v. Padilla,* 104 N.M. 446, 449–50, 722 P.2d 697, 700–01 (Ct.App.1986). An ill-advised strategic decision is not the stuff of which fundamental error is made. *Cf. State v. Crislip,* 110 N.M. 412, 417, 796 P.2d 1108, 1113 (Ct.App.1990), *rev'd on other grounds by Santillanes v. State,* 115 N.M. 215, 225 n. 7, 849 P.2d 358, 368 n. 7 (1993); *and cf. State v. Boeglin,* 105 N.M. 247, 251, 731 P.2d 943, 947 (1987). In this case, by contrast, we see no manner in which the deficiencies in the instructions could have been the product of tactic or strategy; by all appearances, they were simply the result of oversight or neglect. We will not withhold review for fundamental error under such circumstances, particularly in

light of the well-established principle that adequate instruction on self-defense is the duty of the courts where it finds support in the evidence. *See State v. Heisler,* 58 N.M. 446, 455, 272 P.2d 660, 666 (1954) (observing, "where self-defense is involved in a criminal case and there is any evidence, although slight, to establish [such defense], it is not only proper for the court, but its duty as well, to instruct the jury fully and clearly on all phases of the law on [that] issue").

{13} Finally, the State asserts that any defects in the instructions relating to self-defense are harmless, because Defendant exclusively relied at trial on the theory that Jackson's injuries were accidental. We disagree. At trial, Defendant testified that Jackson was the aggressor in each incident of physical conflict, that Jackson attacked him violently and threw him in front of an oncoming vehicle, and that he feared for his life. We regard this as sufficient evidence as to each of the elements of self-defense, *see* UJI 14–5183, particularly in light of the applicable standard, requiring instruction even where the supporting evidence of self-defense is slight. *See State v. Lopez,* 2000–NMSC–003, ¶ 23, 128 N.M. 410, 993 P.2d 727 (quoting *Heisler,* 58 N.M. at 455, 272 P.2d at 666.).

{14} Nor do we regard Defendant's assertions that Jackson's injuries were "accidental," insofar as they were inflicted by scattered debris while the men were fighting in the yard of the residence, to be inconsistent with a theory of self-defense. Defendant's conduct toward Jackson could certainly have been defensive in nature, while the injuries to Jackson's back were unintended. *See State v. Gallegos,* 2001–NMCA–021, ¶ 12, 130 N.M. 221, 22 P.3d 689 (observing it to be "entirely plausible that a person could act intentionally in self-defense and at the same time achieve an unintended result."). Because Defendant introduced evidence from which the jury could reasonably find that Jackson's injuries resulted from the provocation that preceded it, even if the injuries ultimately occurred accidentally, Defendant was entitled to a self-defense instruction. *Id.* ¶ 13.

{15} Finally, we disagree that Defendant's assertion that he did not use a knife rendered the doctrine of self-defense inapplicable, in light of the fact that aggravated assault *with a deadly weapon* was the only pertinent offense charged. We are aware of no authority that would require Defendant to accede to the use of a deadly weapon in order to assert that any injuries were inflicted in self-defense. To the extent that Defendant's denial regarding the knife created an apparent inconsistency between the offense charged and the defense asserted, the jury could resolve the anomalies in the circumstances. *Id.* ¶¶ 8, 14. We therefore hold that instruction on self-defense was both appropriate and necessary in this case, and we decline the State's invitation to regard the deficiencies in those instructions as harmless. *See Acosta*, 1997–NMCA–035, ¶ 8, 123 N.M. 273, 939 P.2d 1081 (noting where there was sufficient evidence to warrant instruction on self-defense, that asserted errors in regard to the state's burden of establishing lack of self-defense will not be regarded as harmless).

2. *Sufficiency of the Evidence*

{16} Defendant also maintains that there was insufficient evidence to support either his conviction for aggravated battery or his conviction for intimidation of a witness. In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict. *State v. Vernon*, 116 N.M. 737, 738, 867 P.2d 407, 408 (1993); *see also State v. Litteral*, 110 N.M. 138, 143, 793 P.2d 268, 273 (1990). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Garcia*, 114 N.M. 269, 274, 837 P.2d 862, 867 (1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

{17} Applying these principles, we find that the State presented sufficient evidence to establish each of the elements of the relevant offenses beyond a reasonable doubt. Defendant's assertions to the contrary are based upon his particular view of the credibility of the State's witnesses and the weight of the evidence against him. However, the jury was not obligated to believe Defendant's testimony, to disbelieve or discount conflicting testimony, or to adopt Defendant's view. *Vernon*, 116 N.M. at 738, 867 P.2d at 408 (noting that the fact finder may reject a defendant's version of the incident in question); *State v. Johnson*, 99 N.M. 682, 685, 662 P.2d 1349, 1352 (1983) (observing that conflicts in the evidence, including conflicts in testimony among witnesses, are to be resolved by the trier of fact). Without further detail, in light of the applicable standard of review on appeal, we hold that Defendant's sufficiency of the evidence argument does not provide a reasonable basis for reversal.

*CONCLUSION*

{18} We hold that the district court committed fundamental error when it omitted the element of absence of self-defense from the aggravated battery instruction, and failed to specify that the State bore the burden of proof in the subsequent self-defense instruction. We also hold that there was sufficient evidence to sustain both of the convictions. Therefore, we affirm Defendant's conviction for intimidation of a witness, and reverse and remand for new trial with regard to the aggravated battery charge.

{19} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Judge and CYNTHIA A. FRY, Judge.