This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                     **NO. 29,406**

**ALVIN MARIANO,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Grant L. Foutz, District Judge**

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**FRY, Chief Judge.**

Defendant appeals his conviction for second degree murder. He raises a single issue, challenging the sufficiency of the evidence to support the verdict. For the reasons that follow, we affirm.

## BACKGROUND

Defendant's conviction arises out of a series of events on December 7, 2007. At that time Defendant, his wife Olivia, and their eight-month-old daughter Kirsten were living in the home of Olivia's brother, Stewart. Also sharing the home was Stewart's other sister, Lanita, along with her husband Alfredo and their three young children. Defendant and Alfredo awoke early, and after dropping Alfredo's children off at school, they bought beer and returned to the house to watch a movie. Later they left to run errands. At that point Defendant made another stop at the liquor store, where he bought an eighteen-pack of beer and a bottle of vodka. They then returned to the house, and Defendant started drinking.

Later, while they were all watching TV, Olivia and Lanita began tickling Defendant. One of the children then struck Defendant. He became angry, pushed Olivia and Lanita, and started swearing. Defendant became increasingly aggressive, and when he pushed Olivia again she fell against Lanita, who in turn fell into the wall so hard that the sheetrock was damaged. Defendant and Olivia then spoke in their room alone, after which Defendant apologized.

Everyone left the house later to run more errands. Ultimately Defendant and Olivia stopped at a bar to try to borrow some money from someone. While they were there Defendant had a brief conversation with a former girlfriend, precipitating

3

another argument. As Defendant and Olivia were arguing, Lanita arrived at the bar in order to retrieve the house key. She told them to stop fighting, and they all left. The argument continued in the car, and at one point, Defendant struck Olivia in the face, knocking a lens out of her glasses.

When they arrived at the house, Defendant entered first, followed by Olivia. About twenty minutes later Lanita went inside as well. The house was quiet, and Lanita began preparing clothing for her children for the next day. She heard a knock on the door and Defendant announced, "I'm getting the hell out of here." When Lanita asked about Olivia, Defendant said she and Kirsten were sleeping in their room.

A little later, Kirsten began crying. Lanita walked into their room and found Kirsten strapped into her car seat and Olivia lying face down on the floor. Assuming Olivia was passed out or sleeping, Lanita brought Kirsten into the living room. When Kirsten began fussing later, Lanita returned to the bedroom to retrieve some diapers. She stepped over Olivia in the process, and noticed that Olivia had not moved.

Alfredo returned to the house that evening and tried to wake Olivia. He found that she was cold and stiff and told Lanita to call 911. By the time the ambulance arrived, Olivia was already dead. The medical personnel who responded to the scene observed that her clothing was in disarray in a manner that suggested she had been re-

dressed by someone else. They also noted that Olivia had numerous readily-observable facial injuries, which both Lanita and Alfredo testified had not been present earlier that day.

When the autopsy was subsequently performed, the examiner found numerous injuries consistent with a beating, including contusions and abrasions on Olivia's face, neck, back, buttocks, and shins. In total, Olivia's body showed at least twenty-three separate areas of injury, which all appeared to have been inflicted at around the same time, within hours of her death. The internal exam showed that Olivia had a large amount of bleeding at the base of the brain, as well as significant bleeding around the carotid artery. The examiner ultimately concluded that a direct blow to the neck had caused "dissection" of this artery, causing blood to enter Olivia's brain, killing her.

**STANDARD OF REVIEW**

"The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted). "Substantial evidence is defined as that evidence which is acceptable to a reasonable mind as adequate support for a conclusion." *State v. Robinson*, 94 N.M. 693, 696, 616 P.2d 406, 409 (1980), *holding limited on other*

5

*grounds by Sells v. State*, 98 N.M. 786, 653 P.2d 162 (1982).  Furthermore, "we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Chavez*, 2009-NMSC-035, ¶ 11, 146 N.M. 434, 211 P.3d 891 (alteration omitted) (internal quotation marks and citation omitted).

**DISCUSSION**

Defendant was convicted of second degree murder pursuant to NMSA 1978, Section 30-2-1(B) (1994).  The elements of the offense include performing acts that result in the killing of a human being without lawful justification or excuse, and knowledge that such acts create a strong probability of death or great bodily harm to that individual or another. *Id.*; *State v. Duffy*, 1998-NMSC-014, ¶ 25, 126 N.M. 132, 967 P.2d 807.

To establish Defendant's guilt, the State called numerous witnesses, including Lanita, Alfredo, and Stewart, whose testimony established the series of events outlined above.  The State also called the medical expert who supervised the autopsy,

6

who testified about the many injuries Olivia suffered as described above, including the dissected artery that ultimately caused her death. Based on this evidence the jury could readily have inferred that Defendant beat Olivia, the dissected carotid artery was among the injuries she suffered in the course of this beating, and, consequently, that Defendant's acts caused her death. *See, e.g.*, *State v. Huber*, 2006-NMCA-087, ¶ 20, 140 N.M. 147, 140 P.3d 1096 (upholding a conviction for second degree murder, based on evidence that the defendant had orchestrated a beating of the victim and the victim's condition worsened and he died shortly thereafter, together with expert testimony that a fatal head injury or internal bleeding may have been the medical cause of death; this evidence permitted the jury to make a reasonable inference that the defendant's acts constituted a significant cause of the victim's death and that there was no other independent event that broke the chain of events from the beating to death).

We acknowledge that Defendant testified to a different version of events and that he presented other evidence tending to undermine various aspects of the State's case. "However, the jury was not obligated to believe [the d]efendant's testimony, to disbelieve or discount conflicting testimony, or to adopt [the d]efendant's view." *State v. Foxen*, 2001-NMCA-061, ¶ 17, 130 N.M. 670, 29 P.3d 1071. As a result, this material presents no basis for reversal. *See State v. Kersey*, 120 N.M. 517, 520, 903

P.2d 828, 831 (1995) (stating that we do not consider the merit of evidence that may have supported a different result); *see also State v. Rojo,* 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (filed 1998) (holding that contrary evidence does not warrant reversal because the jury is free to reject a party's version of events).

On appeal Defendant specifically attacks the sufficiency of the evidence to establish knowledge. The State's apparent lack of direct evidence of Defendant's state of mind is unsurprising. "Knowledge, like intent, is personal in its nature and [is rarely] susceptible of proof by direct evidence. It may [therefore] be inferred from occurrences and circumstances." *State v. Montoya*, 77 N.M. 129, 131, 419 P.2d 970, 971 (1966).

Defendant contends that the evidence does not support an inference of the requisite knowledge in this case. We disagree. As briefly described in the background section of this opinion, evidence was presented that Defendant beat Olivia shortly before her death, causing her to suffer a large number and variety of injuries. The blows were severe enough to cause swelling, bruising, and hemorrhaging. Many of these injuries were inflicted in the vulnerable area of the head, neck, and chest. At least one of the blows was sufficiently forceful to cause dissection of the carotid artery, causing blood to enter the brain, killing her. Based on this evidence, the jury could very reasonably have inferred that Defendant inflicted a brutal beating upon

Olivia, such that he knew or should have known that his actions created a strong probability of death or great bodily harm. *See State v. Brown*, 1996-NMSC-073, ¶¶ 16-17, 122 N.M. 724, 931 P.2d 69 (stating that objective knowledge, rather than subjective knowledge, is required for second degree murder); *see also State v. Baca*, 1997-NMSC-059, ¶ 35, 124 N.M. 333, 950 P.2d 776 ("[A] conviction for second-degree murder requires a finding that the defendant knew or should have known his acts created a strong probability of death or great bodily harm.").

Insofar as Olivia died of an unusual type of internal injury, Defendant claims that her death was unforeseeable. We are unpersuaded. Although carotid artery dissection may be an uncommon occurrence, Defendant's inability to foresee the precise biological cause of Olivia's death is insignificant. As previously stated, the evidence that Defendant repeatedly struck Olivia with sufficient force to cause over twenty observable injuries, including numerous wounds about the head, neck, and chest, is sufficient to establish that Defendant knew or should have known that his acts created a strong probability of death or great bodily harm. The fact that a relatively obscure form of internal injury was the ultimate cause of death is essentially irrelevant. *See, e.g.*, *State v. Garcia*, 61 N.M. 291, 295, 298, 299 P.2d 467, 469, 472 (1956) (upholding a conviction for second degree murder where the victim died after

9

the defendant savagely beat him, ultimately causing a rupture in the vena cava which led to massive internal bleeding).

Defendant further relies on *Garcia* for the proposition that "[m]alice raising the grade of a homicide from manslaughter to murder will ordinarily not be inferred from a blow with the fist" because "death is not the natural or probable result of a blow with the hand." *Id.* at 297, 299 P.2d at 470-71. Although this may be true in the abstract, this case does not involve "a blow with the fist," but rather a very large number of blows to vulnerable areas, which caused both external and internal injuries. This circumstance also distinguishes the present case from the various out-of-state authorities cited by Defendant and renders unavailing the attempted extrapolation from our jurisprudence on the use of deadly force in response to simple batteries.

As *Garcia* illustrates, evidence of excessive force or extreme brutality may support an inference of knowledge. *Id.* at 297, 299 P.2d at 471. In this case, given the number and extent of Olivia's injuries, we conclude that the inference of knowledge is well supported.

**CONCLUSION**

For the foregoing reasons, we reject Defendant's challenge to the sufficiency of the evidence. Defendant's conviction is therefore affirmed.

**IT IS SO ORDERED.**

 

                                   **CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**


**MICHAEL D. BUSTAMANTE, Judge**


**JONATHAN B. SUTIN, Judge**