This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                                    **NO. 29,309**

**EVARISTO AYALA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Kenneth H. Martinez, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

John A. McCall
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**GARCIA, Judge.**

Defendant appeals his convictions of second-degree murder pursuant to NMSA

1978, Section 30-2-1(B) (1994), two counts of tampering with evidence pursuant to NMSA 1978, Section 30-22-5 (2003), conspiracy to commit tampering with evidence pursuant to NMSA 1978, Section 30-28-2 (1979) and NMSA 1978, Section 30-22-5 (2003), and unlawful taking of a motor vehicle pursuant to NMSA 1978, Section 30-16-1 (1987) (amended 2006). Defendant raises three issues on appeal: (1) whether the jury instruction on the homicide charge was erroneous; (2) whether substantial evidence supports a finding that Defendant did not act in self-defense or defense of another; and (3) whether the district court erred in denying Defendant's motion to suppress evidence seized under a search warrant that was based upon an earlier warrantless search of Defendant's mother's apartment. We determine the district court erred when it denied Defendant's motion to suppress the evidence seized pursuant to a warrantless search of Defendant's mother's apartment. We reverse and remand this matter to the district court for a new trial.

**BACKGROUND**

While visiting her boyfriend, Wally Garcia, at the Santa Rosa prison facility Defendant's neighbor, Christa Wyrick, provided authorities with information regarding a possible shooting. This information included details about Defendant shooting an unknown person in Albuquerque. Authorities turned the information over to the Albuquerque Police Department and Detective Frank Flores initiated an

2

investigation. He interviewed Ms. Wyrick by telephone before she left the Santa Rosa prison. Ms. Wyrick stated in her phone interview that Defendant told her "I killed that dude" or "I shot that f\*\*ker." Detective Flores indicated that "[t]here wasn't enough information to know whether somebody had been killed or shot."

Detective Flores immediately went to the apartment complex where, according to Wyrick, Defendant's mother's apartment (Mother's Apartment) was located, "to find out and see if there was somebody there that needed help in that apartment." The officers confirmed with neighbors that Defendant, his mother, and brother lived at Mother's Apartment. "All we knew was somebody had been shot or killed in that apartment possibly." The officers "knocked several times [and] couldn't get any response." It "[d]idn't look like anybody was there[. The l]ights were off at that point." The officers also called out and looked in the windows. Detective Flores then discussed entering the location with his supervisor, Sergeant Argueta. Detective Flores testified that "it's hard to say how long somebody can live being shot, depending on where they are shot . . . [w]e just couldn't take that risk of not checking . . . my main concern was making sure nobody was in there that needed help." "It could have been a body or someone shot that needed aid[, w]e didn't know at that time to take that risk not to find out." Detective Flores also testified that, depending upon the availability of a judge, it could take three or four additional hours to obtain a

warrant. Instead of waiting for a warrant, the officers forcibly entered Mother's Apartment without a warrant and "look[ed] for . . . somebody injured or a body . . . we didn't touch anything." At the time of the warrantless entry, Officer Flores and Sergeant Argueta were aware that it was approximately forty-eight hours after the alleged shooting or murder. Police seized no physical evidence as a result of Detective Flores' initial warrantless entry into Mother's Apartment.

Although police did not seize any physical evidence, they did use observations of blood found inside Mother's Apartment as material information to obtain a subsequent search warrant for the premises. To rule on Defendant's motion to suppress, the district court looked at the actual affidavit and subsequent search warrant. Defendant's motion to suppress was denied. The district court's denial of the motion to suppress was based on the officers' affidavit.

**DISCUSSION**

**1.      The Warrantless Search of Mother's Apartment**

We review the district court's denial of Defendant's motion to suppress as a mixed question of law and fact. *State v. Ryon*, 2005-NMSC-005, ¶ 11, 137 N.M. 174, 108 P.3d 1032. We view the facts in the light most favorable to the prevailing party and defer to the district court's findings of historical facts and witness credibility when supported by substantial evidence. *Id.* The legality of a search, however,

ultimately turns on a question of reasonableness. *Id.* We must carefully balance constitutional values "to shape the parameters of police conduct by placing the constitutional requirement of reasonableness in a factual context." *Id.* (internal quotation marks and citation omitted).

"Warrantless searches and seizures inside a home are presumptively unreasonable, subject only to a few specific, narrowly defined exceptions." *Id.* ¶ 23. "[T]he motivation for the entry [of a home] without a warrant or probable cause must be a strong sense of an emergency." *Id.* ¶ 27. The State argues that the emergency assistance doctrine establishes a valid exception to the warrant requirements for the search of Mother's Apartment. We apply the three-part test adopted in *Ryon* to determine whether the emergency assistance doctrine applies. 2005-NMSC-005, ¶¶ 9, 29 (applying the three- part test established in *People v. Mitchell*, 347 N.E.2d 607 (N.Y. 1976)). "The emergency assistance doctrine requires an emergency, a strong perception that action is required to protect against imminent danger to life or limb, [and] an emergency that is sufficiently compelling to make a warrantless entry into the home objectively reasonable under the Fourth Amendment." *Ryon*, 2005-NMSC-005, ¶ 31. "[I]ndividual privacy expectations must at times yield to a paramount interest in protecting and preserving life." *Id.* ¶ 28. As such, "[p]olice need not ignore an emergency simply because they are conducting a criminal investigation." *Id.*

Under the first part of the *Mitchell* test, police must have reasonable grounds to believe an emergency is at hand and there is an immediate need for police assistance to protect life or property. *Ryon*, 2005-NMSC-005, ¶ 29. To justify intrusion into Mother's Apartment, "officers must have credible and specific information that a victim is very likely to be located at a particular place and in need of immediate aid to avoid great bodily harm or death." *Id.* ¶ 42. In the present case, Detective Flores needed credible and specific information from Wyrick to establish not only that the shooting victim was in Mother's Apartment, but also that the victim was in immediate need of aid approximately forty-eight hours after the shooting occurred. Warrantless entry to a residence is not justified where further investigation of the facts is necessary to establish credible and specific information. *Id.* ¶¶ 32, 43. The test is an objective one, and the officer's subjective beliefs for the entry are irrelevant. *Chavez v. Bd. of County Comm'rs*, 2001-NMCA-065, ¶ 26, 130 N.M. 753, 31 P.3d 1027.

Based upon Detective Flores' testimony and the facts known at the time of entry into Mother's Apartment, the State has failed to meet the first part of the *Mitchell* test for applying the emergency assistance doctrine. There is no evidence to establish that Wyrick told Detective Flores who was shot, when the alleged shooting occurred, where the alleged shooting occurred, or where to locate a purported victim. Wyrick

6

simply informed the detective that Defendant shot or killed someone and that Defendant lived at Mother's Apartment. In addition, Wyrick never indicated that a victim needed aid. In fact, Wyrick told Detective Flores that Defendant also stated the victim had been "killed."

Relying upon this limited information, approximately forty-eight hours after Defendant made his statements to Wyrick inside her apartment, Detective Flores went to the apartment complex where Mother's Apartment is located. The detective initiated an onsite investigation at the apartment complex and did not obtain any further information regarding the shooting, whether a victim existed, or whether a victim was in need aid. Although Detective Flores had some limited general information regarding a possible shooting, he did not possess any credible or specific information that a shooting occurred inside Mother's Apartment, that the shooting victim was presently located inside Mother's Apartment, or that the shooting victim was in need of immediate aid to avoid great bodily harm or death. An officer is not entitled to rely upon his intuition, speculation, or a hunch to establish the objective reasonableness of his actions. *See State v. Baca*, 2007-NMCA-016, ¶ 27, 141 N.M. 65, 150 P.3d 1015 ("Speculation and conjecture are insufficient to establish 'an emergency at hand and an immediate need for [police] assistance.'"); *see also State v. Olson*, 2011-NMCA-056, ¶ 17, 150 N.M. 348, 258 P.3d 1140 ( recognizing that a

detention is improper when it is based on no more than an officer's hunch or speculation of criminal conduct); *State v. Garcia*, 2009-NMSC-046, ¶ 45, 147 N.M. 134, 217 P.3d 1032 (recognizing that an officer is not entitled to rely on mere speculation to establish reasonable suspicion). Breaking into Mother's Apartment to find a possible victim and render potential aid was mere speculation and not supported by credible or specific facts. As a result, exigent circumstances did not necessitate the limited search of Mother's Apartment, and no exception to the Fourth Amendment warrant requirement applies. Such a warrantless search is not constitutionally reasonable.

Because we determine that the State has not met the first part of the *Mitchell* test, it is unnecessary for us to examine and develop the remaining two *Mitchell* test factors. We reverse the district court's ruling that the emergency assistance doctrine established an exigent circumstance to allow Detective Flores to enter Mother's Apartment without a warrant.

**2.      The Search Warrant for Mother's Apartment and Related Evidence**

Relying on *State v. Wagoner* (*Wagoner II*), 2001-NMCA-014, 130 N.M. 274, 24 P.3d 306 and *State v. Trudelle*, 2007-NMCA-066, 142 N.M. 18, 162 P.3d 173, Defendant argues that the evidence gathered as a result of a tainted search warrant should be suppressed. The officer's affidavit and search warrant are not included in

the appellate record. The evidence seized and offered at trial is also missing from the record presented for review. Defendant never clearly identifies what evidence was obtained or admitted as the potential fruits of either search of Mother's Apartment. In addition, Defendant has not materially developed whether additional evidence was in fact obtained as the fruits of the tainted search warrant for review by this Court. *See State v. Gonzales*, 2011-NMCA-007, ¶ 19, 149 N.M. 226, 247 P.3d 1111 (explaining that this Court has no duty to review arguments that are not adequately developed). It is also unclear whether the district court used *Wagonner II* and *Trudelle* when it considered the suppression of the warrant issued for Mother's Apartment. Based on our Opinion, this case will be remanded for a new trial. Resolution of any evidentiary issue involving potential fruits of a tainted search are best left to the district court if raised on remand.

**3.     Sufficiency of the Evidence Regarding the Second Degree Murder Conviction**

With respect to the sufficiency of the evidence challenge, we interpret Defendant's brief as asking us to review whether there was sufficient evidence to establish the element that Defendant did not act in self-defense or defense of another, when he was convicted of second-degree murder. "Our substantial evidence review of the sufficiency of the evidence to support a conviction must take into account both the jury's fundamental role as factfinder in our system of justice and the independent

9

responsibility of the courts to ensure that the jury's decisions are supportable by evidence in the record, rather than mere guess or conjecture." *State v. Flores*, 2010-NMSC-002, ¶ 2, 147 N.M. 542, 226 P.3d 641. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted). "Substantial evidence is defined as that evidence which is acceptable to a reasonable mind as adequate support for a conclusion." *State v. Robinson*, 94 N.M. 693, 696, 616 P.2d 406, 409 (1980), *limited on other grounds by Sells v. State*, 98 N.M. 786, 653 P.2d 162 (1982). Furthermore, "we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. After reviewing the evidence in this light, the question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* In making this determination, a reviewing court "does not weigh the evidence and may not substitute its judgment for that of the fact finder so long as there is sufficient evidence to support the verdict." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988).

Where Defendant presents evidence of self-defense, the jury is charged with weighing the evidence and credibility of the testimony provided. *See State v. Gurule*, 2004-NMCA-008, ¶ 38, 134 N.M. 804, 82 P.3d 975. It is for the jury to determine whether it believes Defendant's evidence and theory of self-defense. *State v. Hunter*, 2001-NMCA-078, ¶ 16, 131 N.M. 76, 33 P.3d 296; *State v. Foxen*, 2001-NMCA-061, ¶ 17, 130 N.M. 670, 29 P.3d 1071 (noting that the jury was not obligated to believe the defendant's assertions regarding testimony, to disbelieve or discount conflicting testimony, or to adopt the defendant's particular view of the credibility of witnesses and weight of the evidence against him). In addition, the reasonableness in the use of force is generally a jury question. *State v. Johnson*, 1998-NMCA-019, ¶ 16, 124 N.M. 647, 954 P.2d 79. When a claim of self-defense is asserted, Defendant is only obligated to raise reasonable doubt in the minds of the jurors. *State v. Harrison*, 81 N.M. 623, 630, 471 P.2d 193, 200 (Ct. App. 1970).

Defendant's brief fails to identify the evidence in the record that supports the jury's determination that he did not act in self-defense or defense of another. The only evidence presented by Defendant in his brief was evidence the jury would have rejected in finding that Defendant did not act in self-defense or defense of another. However, the State points to evidence that Defendant was the first aggressor when he pulled a gun on the victim, the victim was severely injured by multiple wounds

inflicted during the incident, and the trajectory of the fatal bullet was consistent with the victim being shot execution style through the face from a higher position. We are satisfied that there is sufficient conflicting evidence regarding the shooting incident for a jury to reject Defendant's claims that he acted in self-defense and defense of another when he shot the victim.

**4.       Remand for Retrial**

Because there was substantial testimony and evidence to support Defendant's conviction for second-degree murder, double jeopardy does not attach and this matter is remanded for a new trial. *State v. Gallegos*, 2005-NMCA-142, ¶ 34, 138 N.M. 673, 125 P.3d 652 (recognizing that "principles of double jeopardy [only] bar retrial if [a d]efendant's convictions are not supported by substantial evidence" (internal quotation marks and citation omitted)), *aff'd in part, rev'd in part on other grounds by* 2007-NMSC-007, 141 N.M. 185, 152 P.3d 828; *State v. Post*, 109 N.M. 177, 181, 783 P.2d 487, 491 (Ct. App. 1989) ("If all of the evidence, including the wrongfully admitted evidence, is sufficient, then retrial following appeal is not barred [by the Double Jeopardy Clause]."). Defendant has failed to adequately address the evidentiary requirements necessary to bar retrial in this case. *See State v. Graham*, 2005-NMSC-004, ¶ 6, 137 N.M. 197, 109 P.3d 285 (setting out the two-part test for whether substantial evidence exists to support a conviction); *see also Gonzales*, 2011-

12

NMCA-007, ¶ 19 (explaining that this Court has no duty to review arguments that are not adequately developed); *State v. Torres*, 2005-NMCA-070, ¶ 34, 137 N.M. 607, 113 P.3d 877 (stating that this Court will not address issues unsupported by argument and authority).  As a result, double jeopardy does not bar a retrial of Defendant for his convictions in this case.

Finally, since we reverse and remand for a new trial based upon the error in denying Defendant's motion to suppress, it is not necessary to address Defendant's remaining assertion of error regarding the jury instructions.

**CONCLUSION**

We reverse Defendant's convictions and remand this matter back to the district court for a new trial.  We instruct the district court to suppress all evidence obtained as a result of the initial warrantless search of Mother's Apartment and to address any issues regarding the search warrant that may be raised on remand.

**IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Chief Judge**

_____

**MICHAEL E. VIGIL, Judge**