# IN THE COURT OF APPEALS STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>October 27, 2014</u>

**NO. 32,794**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellant,

v.

**JOSEPH ARCHULETA,**

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Ross C. Sanchez, District Judge**

Gary K. King, Attorney General
Corinna Laszlo-Henry, Assistant Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellant

Law Offices of the Public Defender
Jorge A. Alvarado, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**OPINION**

**VIGIL, Judge.**

{1}     *State v. Tower*, 2002-NMCA-109, ¶ 9, 133 N.M. 32, 59 P.3d 1264, holds that entry into a commercial business establishment contrary to a no trespass order constitutes an "unauthorized entry" into the business under our commercial burglary statute.  The question presented in this case is whether *Tower* should be overruled in light of our Supreme Court's opinion in *State v. Office of the Public Defender ex rel. Muqqddin*, 2012-NMSC-029, 285 P.3d 622.  The district court concluded that *Tower* is no longer viable in light of *Muqqddin*, and dismissed the indictment charging Defendant with one count of commercial burglary in violation of NMSA 1978, Section 30-16-3(B) (1971), and the State appeals.  Agreeing with the district court, we overrule *Tower* and affirm.

**BACKGROUND**

{2}     Defendant was charged with one count of commercial burglary on the basis that he entered a Walgreens store "without authorization or permission, with intent to commit any felony or a theft therein[.]"  Defendant filed a motion to dismiss pursuant to Rule 5-601 NMRA and *State v. Foulenfont*, 1995-NMCA-028, 119 N.M. 788, 895 P.2d 1329, requesting that the district court determine "[w]hether, as a matter of law, entry into a commercial establishment during business hours with intent to commit

a theft within the business, when such entry was made after a no trespass order had been served, constitutes the offense of [b]urglary[.]"

{3} For purposes of the motion, Defendant conceded that he entered a Walgreens store through a public entrance during business hours and without ever leaving any areas openly accessible to the public, concealed a bottle of Bacardi Rum worth twelve dollars and eighty-three cents ($12.83) in his jacket and walked past all final points of sale without paying for the bottle. Defendant further conceded that he had previously been issued a warning that he was denied permission to enter or remain on property belonging to Walgreens and that he intended to commit a theft from the Walgreens when he entered it. Defendant argued that charging him with the felony of burglary, rather than with misdemeanor criminal trespass and shoplifting or petty larceny, resulted in the overly expansive application of the burglary statute cautioned against by our Supreme Court in *Muqqddin*.

{4} The State opposed the motion on the grounds that the issue was improperly raised as a *Foulenfont* motion,[1] that *Tower* is directly on point, and that *Muqqddin* is

---

[1] By conceding to the material facts for the purpose of determining whether they are sufficient to support a burglary charge **[RP 42-43]**, Defendant properly raised a legal issue that the district court could resolve without a trial because the State did not demonstrate that the facts are in dispute. *See Foulenfont*, 1995-NMCA-028, ¶ 6 (holding that the district court has authority to resolve purely legal questions under Rule 5-601 where the facts are not disputed).

2

distinguishable. The district court determined that, while *Tower* is directly on point, *Muqqddin* directed trial courts to consider what the Legislature intended when applying the burglary statute. And, having considered the Legislature's intent, the district court determined that the Legislature did not intend for the burglary statute to be used to prosecute what are "better revealed in the lesser statutes of [t]respass . . . and [s]hoplifting[.]" The district court therefore dismissed the charge with prejudice. In reaching its determination, the district court relied on the following undisputed facts:

1. Defendant entered into a Walgreens store, which is a commercial business establishment during business hours with intent to commit theft within the business.

2. Defendant committed a theft with[in] the business.

3. The entry was made after a no trespass order had been issued and served on Defendant, and Defendant's permission to be inside the store had been explicitly revoked.

**DISCUSSION**

{5} On appeal, we must decide whether to overrule a prior opinion of this Court. The decision to overrule prior precedent is not one that is undertaken lightly. We remain "mindful of the principles of stare decisis and take care to overrule established

3

precedent only when the circumstances require it." *State v. Pieri*, 2009-NMSC-019, ¶ 21, 146 N.M. 155, 207 P.3d 1132. Thus, before overruling a prior opinion, we consider:

> 1) whether the precedent is so unworkable as to be intolerable; 2) whether parties justifiably relied on the precedent so that reversing it would create an undue hardship; 3) whether the principles of law have developed to such an extent as to leave the old rule no more than a remnant of abandoned doctrine; and 4) whether the facts have changed in the interval from the old rule to reconsideration so as to have robbed the old rule of justification.

*State v. Swick*, 2012-NMSC-018, ¶ 17, 279 P.3d 747 (quoting *State v. Riley*, 2010-NMSC-005, ¶ 34, 147 N.M. 557, 226 P.3d 656, *overruled on other grounds by State v. Montoya*, 2013-NMSC-020, ¶ 2, 306 P.3d 426). "When one of the aforementioned circumstances convincingly demonstrates that a past decision is wrong," we should not hesitate to overrule even recent precedent. *Pieri*, 2009-NMSC-019, ¶ 21 (alteration, internal quotation marks, and citation omitted). With these principles in mind, we now turn to a consideration of *Muqqddin* and *Tower*.

### *Muqqddin*

{6} In *Muqqddin*, our New Mexico Supreme Court called into question forty years of this Court's burglary decisions. Our Supreme Court noted that, during that time, this Court "issued numerous opinions that, for the most part, . . . expanded

4

significantly the reach of the burglary statute," and noted that this expansion "occurred without any parallel change in the statute." 2012-NMSC-029, ¶ 1. According to our Supreme Court,

> [a]s the crime of burglary has continued to expand, it seems at times to have transformed into an enhancement for any crime committed in any type of structure or vehicle, as opposed to a punishment for a harmful entry. In the past, the typical burglary scenario involved a home invasion, and the crime was intended to protect occupants against the terror and violence that can occur as a result of such an entry. Yet today it has become more common to add a burglary charge to other crimes where the entry itself did not create or add any potential of greater harm than the completed crime. Our Legislature has never expressed an intent that burglary be used as an enhancement, nor has it clearly authorized the steady progression of judicial expansion of burglary as seen over the past 40 years.

*Id.* ¶ 3 (citation omitted).

{7}     Our Supreme Court instructed that "the original common-law purpose of burglary, the protection of the security of habitation or a similar space, is still relevant when construing our modern burglary statute." *Id.* ¶ 39. The Supreme Court reminded both bench and bar that "burglary has a greater purpose than merely protecting property[,]" *id.* ¶ 39, and that "[i]t is the invasion of privacy and the victim's feeling of being personally violated that is the harm caused by the modern burglar, and the evil that our society is attempting to deter through modern burglary

statutes." *Id.* ¶ 42. While our Supreme Court recognized that "[t]he privacy interest that our modern burglary statute protects is . . . broader than[] the security of habitation," it also noted that the burglary statute is still aimed at "protect[ing] against the feeling of violation and vulnerability that occurs when a burglar invades one's personal space." *Id.* ¶ 43.

{8} Finally, the Supreme Court provided guidance to lower courts, reminding us that "[f]irst and foremost, what is being punished as a felony under Section 30-16-3 is a harmful entry[,]" *id.* ¶ 60; that such entry refers to "places where things are stored and personal items can be kept private[,]" *id.* ¶ 61; and that "burglary is a serious offense with serious consequences[,]" *id.* ¶ 60. Keeping in mind our Supreme Court's effort at guiding future applications of our burglary statute, we now turn to *Tower.*

**Tower**

{9} In 2002, this Court issued its decision in *Tower.* After being caught shoplifting at a Foley's department store, the defendant was given a trespass notice by Foley's, informing him that he was no longer welcome in any Foley's and, if he was ever found on Foley's property, he would be arrested for criminal trespass. 2002-NMCA-109, ¶ 2. Two years later, after the defendant was seen in Foley's shoplifting, he was indicted on charges of burglary and larceny. *Id.* ¶ 3. The district court dismissed the burglary charges on the ground that the defendant had inadequate notice "that his re-

entry into Foley's [would] result in any charge more severe than trespassing." *Id.* (internal quotation marks omitted). The state appealed the district court's decision.

{10} On appeal, we addressed whether the burglary statute was unconstitutionally vague as applied to the defendant's conduct and, therefore, whether the defendant's conduct was clearly proscribed by the burglary statute. *Id.* ¶ 4 (stating that, "[b]ecause the essence of a vagueness claim rests on a lack of notice, a party may not succeed on the claim if the statute clearly applies to the defendant's conduct" (internal quotation marks and citation omitted)). We held that the burglary statute clearly applied:

> The crime of burglary "consists of the unauthorized entry of any . . . structure, . . . with the intent to commit any felony or theft therein." Here, [the d]efendant entered the Foley's department store after his permission to enter had been revoked. Thus, he was unauthorized to enter the store. Since he was caught stealing articles from the store, it can reasonably be inferred that he entered the store with the intent to steal items from it. It appears that the burglary statute clearly applies to [the d]efendant's conduct.

*Id.* ¶ 5 (omissions in original) (citation omitted).

{11} We reasoned that, although "the store was generally open to the public as a place of commerce" and "the shopping public was given authority to enter the store[,] . . . a private property owner can restrict the use of its property, either to certain

7

persons or to those purposes for which it was dedicated[,] so long as the restrictions are not discriminatory." *Id.* ¶ 7. Thus, because Foley's gave the defendant a notice that he could no longer enter the store, we concluded that Foley's "revoked any authority that [the defendant] might otherwise have had to enter the property as a member of the public." *Id.* We therefore reversed, concluding that because "the law is clear that a burglary is an unauthorized entry into a structure with the intent to commit a felony or theft therein[, and the d]efendant knew that he was not authorized to enter Foley's[,] . . . . his entry for the purpose of committing shoplifting (a theft) was a burglary." *Id.* ¶ 9.

{12}    Absent from our analysis in *Tower* is any discussion regarding whether the entry was "harmful"—the gravamen of *Muqqddin*. Instead, our analysis in *Tower* focused exclusively on the plain language of the statute and the ability of a department store to revoke its permission to enter. And, while it is clear that such revocation of permission to enter may give rise to criminal trespass,[2] it is less clear following our Supreme Court's decision in *Muqqddin* whether that revocation will support felony charges for burglary.

---

[2]NMSA 1978, Section 30-14-1(B) (1995) defines "criminal trespass" as "knowingly entering or remaining upon the unposted lands of another knowing that such consent to enter or remain is denied or withdrawn by the owner or occupant thereof."

{13}     A similar issue was recently presented to this Court in *State v. Baca*, 2014-NMCA-087, 331 P.3d 971, *cert. granted*, 2014-NMCERT-008, ___ P.3d ___. *Baca* involved a defendant charged with commercial burglary where the defendant, who was not a member of Costco, shoplifted after gaining entry into Costco by using a membership card that did not belong to him. *Id.* ¶ 5. We determined that entry by a non-member during business hours, did not constitute an unauthorized entry under our burglary statute. *Id.* ¶ 6. In reaching that conclusion, we reasoned that there was "no particular security or privacy interest at stake inside Costco that justifies recognizing a departure from the general rule that we presume retail stores to be open to the public"; that "[the d]efendant's entry into th[e] shopping area d[id] not implicate 'the feeling of violation and vulnerability' we associate with the crime of burglary"; and that "[the d]efendant's entry into Costco during business hours, albeit deceptive, granted him access to an otherwise open shopping area, as opposed to an area 'where things are stored and personal items can be kept private.'" *Id.* ¶ 9 (quoting *Muqqddin*, 2012-NMSC-029, ¶¶ 43, 61). While *Baca*, ultimately, "express[ed] no opinion as to [*Tower*'s] continuing precedential value," *Baca* questioned "the continuing validity of general statements in *Tower* indicating that a retail store's notice revoking a person's permission to be on the premises is sufficient

9

by itself to make his or her presence unauthorized under our burglary statute." *Baca*, 2014-NMCA-087, ¶ 11. We possess similar concerns here.

{14} We have difficulty envisioning how a defendant's entry into an open public shopping area, even where the person entering the shopping area has received a notice of no trespass, can constitute the kind of harmful entry prohibited by the burglary statute. *Tower* did not address that question but merely relied on the plain language of the burglary statute—an approach for which the State also advocates. However, *Muqqddin* cautioned against relying solely on the plain language of the statute. 2012-NMSC-029, ¶ 38 ("[C]ourts must exercise caution in applying the plain meaning rule. Its beguiling simplicity may mask a host of reasons why a statute, apparently clear and unambiguous on its face, may for one reason or another give rise to legitimate (i.e., nonfrivolous) differences of opinion concerning the statute's meaning[.]" (internal quotation marks and citation omitted)). Rather, *Muqqddin* instructs prosecutors and courts alike to assess whether the conduct in question falls within the parameters of the burglary statute "construed in light of the purpose for which it was enacted." *Id.* ¶ 36 (internal quotation marks and citations omitted); *see also id.* ¶ 59 ("When deciding whether or not a burglary charge is appropriate, courts and [d]istrict [a]ttorneys *must* consider whether or not this is the type of entry the Legislature intended Section 30-16-3 to deter." (Emphasis added.)). And, according

to our Supreme Court, "[f]irst and foremost" in making that determination, we must consider whether the conduct in question is "a harmful entry."[3] *Muqqddin*, 2012-NMSC-029, ¶ 60. Under the circumstances presented in this case—entry into an otherwise open public shopping area after receiving a notice of no trespass—we conclude as a matter of law that a harmful entry did not occur. Accordingly, we overrule *Tower*.

{15} The State argues that "any departure from the doctrine of *stare decisis* demands special justification[,]" that *Tower* remains a workable precedent, and that the State relied on *Tower* in making its charging decision. As we have discussed, our Supreme Court in *Muqqddin* issued a directive to reevaluate existing burglary jurisprudence to ensure that it is consistent with what our Supreme Court identified as the legislative intent behind our modern burglary statute. Pursuant to that directive, we have reevaluated *Tower* and have concluded that it is incompatible with the principles articulated in *Muqqddin*. No further justification for overruling *Tower* is necessary.

---

[3] The State argues that requiring the entry to be "harmful," or one that would cause someone "to suffer a feeling of violation and vulnerability," adds an additional element to the burglary statute and creates a fact-based determination that cannot be resolved pretrial. **[BIC 10]** We disagree. *Muqqddin* did not add an element to the Legislature's statutory definition of burglary that the State is required to prove at trial. Rather, the inquiry into whether an entry is the type that would result in a feeling of violation and vulnerability is a determination that the Supreme Court has required as part of a statutory interpretation analysis that is resolved as a matter of law.

11

Thus, the State's reliance on *Tower* in making the decision to charge Defendant with burglary is an insufficient basis for permitting *Tower* to stand in light of this Court's conclusion that *Tower* is inconsistent with the principles articulated in *Muqqddin*.

{16}   Our decision to overrule *Tower* is further supported by looking to the remaining considerations articulated in *Muqqddin* for determining when criminal conduct should be charged under the burglary statute.  Our Supreme Court cautioned us to "be cognizant of the disparity in potential penalties that can stem from a burglary charge due to its unique place in our jurisprudence." 2012-NMSC-029, ¶ 62.

> The lesson from cases such as those presented here, along the outer fringes of what the Legislature may or may not consider as burglary, is that trial courts and trial counsel must consider more than just the words of a statute.  Words are the beginning, not the end; they serve as portals into the thoughts behind the words of a criminal statute.  Where, as here, those *thoughts* are revealed in another, lesser statute, that becomes a fairly reliable indicator of legislative intent, both as to the specific crime and, more importantly, the gravity of the offense.

*Id.* ¶ 54.

{17}   "As a felony, burglary is a serious offense with serious consequences. . . . [It] is no petty crime."  *Id.* ¶ 60.  Commercial burglary is a fourth degree felony. *See* § 30-16-3(B).  Conversely, criminal trespass is a misdemeanor offense, *see* § 30-14-1(B), (E), and larceny and shoplifting under $250 are petty misdemeanors. *See* NMSA 1978, § 30-16-1(B) (2006) (larceny); NMSA 1978, § 30-16-20(B)(1)

(2006) (shoplifting). By classifying the conduct at issue as a misdemeanor or petty misdemeanor, the Legislature signaled its intent that these acts not be punished as severely as burglary. As our Supreme Court noted, the burglary statute "was not designed solely to deter trespass and theft, as those are prohibited by other laws." *Muqqddin*, 2012-NMSC-029, ¶ 40. Thus, given this disparity, we agree with the district court's conclusion, that the Legislature did not intend for the burglary statute to be used to prosecute conduct that, in this case, is "better revealed in the lesser statutes of [t]respass . . . and [s]hoplifting[.]" Moreover, to the extent ambiguity remains as to whether the Legislature intended for this type of conduct to be prosecuted under the burglary statute, "[t]he rule of lenity requires that ambiguity in criminal statutes [be] strictly construed against the [s]tate." *Id.* ¶ 58 (second alteration in original) (internal quotation marks and citation omitted). Thus, under the rule of lenity, any ambiguity must be resolved against the application of the burglary statute to the conduct at issue in this case.

{18} Finally, the State challenges the district court's ruling, arguing that the district court was bound by *Tower* and that "[i]t is not the prerogative of the lower courts to overrule controlling precedent, despite the fact that subsequent cases may raise doubts about their continued vitality." While we acknowledge that lower courts are bound by controlling precedent "in order to protect the fundamental interests of

13

fairness, certainty, uniformity, and judicial economy," *State ex rel. Martinez v. City of Las Vegas*, 2004-NMSC-009, ¶ 20, 135 N.M. 375, 89 P.3d 47, we decline to address the propriety of the district court's decision not to apply *Tower*, as it does not provide a basis for reversal. Ultimately, we have determined that *Tower* is inconsistent with the principles articulated in *Muqqddin* and must be overruled, and the district court's act of refusing to apply *Tower* does not alter that decision.

{19} In sum, we conclude that violating an order of no trespass by entering an otherwise open public shopping area with the intent to commit a theft does not constitute the type of harmful entry required for a violation of the burglary statute in the wake of *Muqqddin*. To the extent that *Tower* holds that the burglary statute applies to such conduct, *Tower* is expressly overruled. We conclude that to hold otherwise allows the State to use the burglary statute to enhance the misdemeanor act of trespassing to a felony—an enhancement that *Muqqddin* does not permit.

**CONCLUSION**

{20} For the reasons articulated above, the order of the district court is affirmed.

{21} **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

14

**WE CONCUR:**

_____
**LINDA M. VANZI, Judge**

_____
**J. MILES HANISEE, Judge**