# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>February 11, 2016</u>

**NO. 33,350**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**ARTHUR J. MESTAS,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Freddie J. Romero, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Kenneth H. Stalter, Assistant Attorney General
Albuquerque, NM

for Appellee

L. Helen Bennett
Albuquerque, NM

for Appellant

**OPINION**

**HANISEE, Judge.**

{1} Defendant appeals from the district court's judgment of conviction for burglary and conspiracy to commit burglary after a jury found him guilty of those offenses. The issues Defendant raises require us to again evaluate our burglary jurisprudence in light of *State v. Office of Public Defender ex rel. Muqqddin*, 2012-NMSC-029, 285 P.3d 622. We do so, and affirm.

**I.     BACKGROUND**

{2} On October 1, 2012, Edward Fisher was working as a desk clerk and night monitor at the Motel 6 in Roswell. Mr. Fisher's desk was behind a chest-high counter that separated his office from a lobby open to motel guests and the public. Next to the counter was a locked door that allowed Mr. Fisher and other motel employees to enter and return from the lobby area. A mechanized "shutter" or "shield" was built into a recess in the ceiling above the counter, allowing employees to completely enclose the desk area (thereby preventing any access from the lobby) by pressing a button behind the counter. The desk behind the counter contained a lockable cash drawer.

{3} At about 2:20 a.m., Defendant walked into the motel lobby. Defendant asked Mr. Fisher to reset the motel's wireless internet router; although the testimony is unclear on this point, it seems that Defendant told Mr. Fisher that his wife was having

trouble accessing the internet using the motel's wireless network. Mr. Fisher thought Defendant was a motel guest, but in fact Defendant was a former employee of the motel.

{4}     Mr. Fisher agreed to reset the router. This required Mr. Fisher to leave his desk, take an elevator to the second floor, unplug the router, wait for thirty seconds, plug the router back in, wait for another thirty seconds to confirm that the router was working, and then return to the ground floor on the elevator. Before he left, Mr. Fisher locked the door separating his desk area from the lobby and the desk drawer containing cash. However, Mr. Fisher did not activate the barrier above the counter.

{5}     After Mr. Fisher left his desk, another man entered the lobby. Video evidence offered by the State and viewed by the jury shows the man putting his hands on the counter and lifting his knees onto an overhang just below the counter top. The man further ascended the counter so that his thighs rested on its top; this put the man's arms and torso inside the clerk's room. The man jimmied the lock on the cash drawer and took about $250. The man then closed the drawer, dismounted from the counter, and left the lobby. Defendant followed the man out of the lobby and can be seen walking away from the motel in the same direction as the man who committed the theft. The clerk testified that when he returned to his desk, "it took me a minute to realize we'd been robbed, because they'd closed the drawer again, and the lock had

2

been forced open, instead of turned, so it looked like nothing had been touched."

{6} Defendant was tried in the district court on charges of non-residential burglary in violation of NMSA 1978, Section 30-16-3(B) (1971) and conspiracy to commit burglary in violation of NMSA 1978, Section 30-28-2 (1979). At the close of the State's evidence at trial, Defendant moved for a directed verdict on the burglary and conspiracy charges. The district court denied the motion, stating that a rational jury could infer that the clerk's desk was inside a non-public area that was closed off from the lobby by a locked door. Although the district court noted the fact that Mr. Fisher had not closed the retractable barrier over the counter to prevent access to the desk area altogether, it concluded the open space above the counter was "akin to an open window," and that therefore the non-public clerk's area behind the counter could be burglarized. *See Muqqddin*, 2012-NMSC-029, ¶ 48 (stating that "a burglary can be committed through an open window"). The jury convicted Defendant of both counts.

**II.   STANDARD OF REVIEW**

{7} In separate points of appeal asserting error in the denial of his motion for a directed verdict, Defendant challenges the sufficiency of the evidence as to his conviction for burglary and his conviction for conspiracy to commit burglary. Regarding his burglary conviction under Section 30-16-3(B), Defendant presents a question of statutory construction that we divide into two sub-issues: (1) whether

3

entry into the clerk's office adjacent to and accessible from a public lobby constitutes an "unauthorized entry"; and (2) whether the clerk's office is a "structure" that may be burglarized.

{8} In considering Defendant's argument that his conduct is outside the scope of that described to be burglary by Section 30-16-3, we review the district court's denial of Defendant's motion for a directed verdict de novo. *See State v. Baca*, 2014-NMCA-087, ¶ 5, 331 P.3d 971 ("Statutory construction is a question of law which we review de novo."), *cert. granted*, 2014-NMCERT-008, 334 P.3d 425, *cert. quashed*, 2015-NMCERT-___, ___ P.3d ___ (May 11, 2015). As to Defendant's challenge to the sufficiency of the evidence underlying his conspiracy conviction, we review the record to determine whether

> sufficient evidence was adduced to support the underlying charge. The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction. When considering the sufficiency of the evidence, this Court does not evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence. Instead, we view the evidence as a whole and indulge all reasonable inferences in favor of the jury's verdict while at the same time asking whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt[.]

*State v. Sena*, 2008-NMSC-053, ¶ 10, 144 N.M. 821, 192 P.3d 1198 (alteration, internal quotation marks, and citations omitted).

4

## III. DISCUSSION

### A. The Conduct at Issue Amounted to a "Burglary" as Defined in Section 30-16-3

{9} In *State v. Sanchez*, 1987-NMCA-035, 105 N.M. 619, 735 P.2d 536, this Court upheld two burglary convictions for entering a private area within a structure open to the public with the intent to commit theft or another felony. Judge Apodaca penned a special concurrence, worrying that this Court's jurisprudence was "stepping too far afield" from the conduct our state's burglary statute intended to proscribe. *Id.* ¶ 13 (Apodaca, J., specially concurring). That concern proved prophetic. In *Muqqddin*, our Supreme Court called into question forty years of the Court of Appeals' burglary decisions. *See* 2012-NMSC-009, ¶ 1; *State v. Archuleta*, 2015-NMCA-037, ¶ 6, 346 P.3d 390, *cert. granted*, 2015-NMCERT-001, 350 P.3d 091, *cert. quashed*, 2015-NMCERT-___, ___ P.3d ___ (May 11, 2015). Our Supreme Court criticized this Court's "issu[ance of] numerous opinions that, for the most part, . . . expanded significantly the reach of the burglary statute . . . without any parallel change in the statute." *Muqqddin*, 2012-NMSC-029, ¶ 1.

{10} We interpret *Muqqddin* to require us to reevaluate our burglary precedent. *See, e.g., Baca*, 2014-NMCA-087, ¶ 11 ("[F]ollowing *Muqqddin*, we question the continuing validity of general statements in [*State v.*] *Tower*[, 2002-NMCA-109, 133 N.M. 32, 59 P.3d 1264, *overruled by Archuleta*, 2015-NMCA-037, ¶ 14] indicating

5

that a retail store's notice revoking a person's permission to enter on the premises is sufficient by itself to make his or her presence [in the store] unauthorized under our burglary statute."). As we explain below, *Muqqddin* repudiated much of the analysis this Court employed to decide *Sanchez*. The question presented by this appeal is not whether *Sanchez* remains good law; we think *Muqqddin* has all but abrogated that decision. Rather, the question is whether, on a set of facts quite analogous to those in *Sanchez*, *Muqqddin* requires us to reverse Defendant's conviction in this case. We think not.

{11} Since Defendant was convicted as a co-conspirator and accomplice (i.e., the unknown man, and not Defendant, scaled the counter, accessed the locked drawer, and removed the motel's cash), he challenges his conviction for burglary and conspiracy to commit burglary by contending that his accomplice's conduct falls outside the scope of the burglary statute for two reasons: (1) there is no evidence that his accomplice committed an "unauthorized entry" because the Motel 6 lobby area was open to the public; and (2) the clerk's area adjacent to the motel lobby is not a "structure" that may be burglarized. We address each assertion in turn, and discuss Defendant's contention that he is not responsible for the unknown man's actions in conjunction with his sufficiency challenge to his conviction for conspiracy to commit burglary.

**1.** **Defendant's Accomplice Committed an Unauthorized Entry When He Reached into a Private Area Separated From the Motel's Public Lobby**

{12}     New Mexico's burglary statute reads: "Burglary consists of the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, with the intent to commit any felony or theft therein." Section 30-16-3. Burglary of a "dwelling house" is a third-degree felony. Section 30-16-3(A). All other burglaries are fourth-degree felonies. Section 30-16-3(B).

{13}     To determine the applicability of the burglary statute to the evidence of Defendant's conduct adduced at trial, we must first consider whether the "entry" Defendant committed is "unauthorized." *See* Section 30-16-3(A). In other words, we ask whether the entry described by the evidence at trial "is the type of entry the Legislature intended Section 30-16-3 to deter." *Muqqddin*, 2012-NMSC-029, ¶ 59. A given entry is "unauthorized" if it violates or potentially violates the possessory rights (particularly the right to exclude) and privacy interests of a protected structure's rightful occupant. *Id.* ¶¶ 41-43, 60.

{14}     It is helpful to understand *Muqqddin* as drawing a distinction between the sorts of *conduct* that qualify as burglary—unauthorized entries—and the *places* that may be burglarized—dwellings, vehicles, watercrafts, aircrafts, or "other structure[s], movable or immovable." Section 30-16-3(B). As to conduct, our Supreme Court held that by removing distinctions based on the time the offense conduct occurred, the

7

Legislature did not intend to drastically expand the scope of existing burglary statutes, but rather to "combin[e] several statutes that were firmly rooted in the common law." *Muqqddin*, 2012-NMSC-029, ¶ 33. Thus, Section 30-16-3 was the Legislature's effort to condense separate codifications of the common law into a single, simplified section of the larceny subchapter of our criminal code. *Muqqddin*, 2012-NMSC-029, ¶¶ 19-21, 33-34. The term "unauthorized entry" dispensed with anachronistic elements that are difficult to apply, such as whether the offense conduct occurred at night or whether or not a particular entry involved a "breaking," *id.* ¶¶ 17-18, while at the same time preserving the "entry" element so as to preserve the common law understanding of burglary as an offense against "the security of habitation or a similar space[.]" *Id.* ¶ 39.

{15}    *Muqqddin* attempts to reconcile the Legislature's preservation of the common law understanding of the sort of conduct that constitutes burglary with the Legislature's indisputable intent to expand of the set of locations that may be burglarized to include all "other structures, movable or immovable." *Id.* ¶¶ 27, 34. The solution was to admonish lower courts to employ traditional tools of statutory construction and the rule of lenity to ensure that our burglary statute does not become an automatic "enhancement for any crime committed in any type of structure or vehicle, as opposed to a punishment for a harmful entry." *Id.* ¶ 3.

8

{16} In *Muqqddin*, our Supreme Court evaluated this Court's expansive application of the term "vehicle" under Section 30-16-3 to prohibit the Defendant's piercing of the gas tank beneath a van with the intent to siphon gas. *See State v. Muqqddin*, 2010-NMCA-069, ¶¶ 5-6, 8, 11, 148 N.M. 845, 242 P.3d 412, *rev'd by* 2012-NMSC-029, ¶ 1. Our Supreme Court rejected our perspective, which would have allowed the state to obtain burglary convictions for acts that did not implicate the security of habitation that the common law offense of burglary was intended to protect. *Muqqddin*, 2012-NMSC-029, ¶ 38. In other words, our reading of the word "vehicle" to include everything within the exterior perimeter of the vehicle as a whole (including objects which could not be occupied by humans, such as the gas tank) expanded the scope of the phrase "unauthorized entry" beyond its common law conception. *Id.* ¶¶ 38, 45 ("Prohibited space is private space. It is the nature of the enclosure that creates the expectation of privacy. Enclosure puts the public on notice. . . . The proper question is whether the nature of a structure's composition is such that a reasonable person would expect some protection from unauthorized intrusions." (alteration, internal quotation marks, and citation omitted)).

{17} With this understanding of *Muqqddin*, we proceed to analyze the offense conduct that gave rise to Defendant's conviction for violating Section 30-16-3. Defendant argues that because the motel lobby was open to the public, there is no

substantial evidence that the unauthorized man entered the motel without authorization, a prerequisite to Defendant's conviction for burglary. As we noted initially, we were presented with a similar set of facts in *Sanchez*, in which we consolidated two separate appeals, one involving the "unauthorized entry into the loading dock area of A.P.K. Auto Parts, a retail store, with intent to steal[,]" the other involving the "unauthorized entry into an office in Presbyterian Hospital in Albuquerque[.]" 1987-NMCA-035, ¶ 2.

{18} Both defendants in *Sanchez* raised the same argument that Defendant makes here: entry into a private area wholly contained within a building otherwise open to the public does not constitute an "unauthorized entry" under Section 30-16-3. *Sanchez*, 1987-NMCA-035, ¶ 3. The defendants cited an Alaska case, *Arabie v. State*, 699 P.2d 890, 893 (Alaska Ct. App. 1985), which reversed a defendant's conviction for burglary for entering a walk-in cooler at the back of a convenience store. *See also Sanchez*, 1987-NMCA-035, ¶ 4 (discussing *Arabie*).

{19} This Court acknowledged that the facts in *Arabie* were "quite similar" to the facts underlying the convictions under review in *Sanchez*. *See Sanchez*, 1987-NMCA-035, ¶ 4. But we concluded that *Arabie*'s reasoning did not control for three reasons: (1) "Alaska's commitment to bringing statutory burglary close to its common law ancestor[,]" (2) the Alaska court's "[c]onsideration . . . [of] the likelihood that the

10

type of entry charged would terrorize occupants[,]" and (3) the Alaska burglary statute uses the term "building" for its catchall while the New Mexico burglary statute uses the word "structure[.]" *Sanchez*, 1987-NMCA-035, ¶¶ 5-8.

{20} *Muqqddin* repudiates much of the logic underpinning our decision in *Sanchez*. *Compare Sanchez*, 1987-NMCA-035, ¶ 6 ("New Mexico, unlike Alaska, has demonstrated no legislative intent to restrict the definition of burglary nor to bring that crime closer to its common law root. In New Mexico, the statutory offense of burglary is one against the security of property, and its purpose is to protect possessory rights." (citing *State v. Rodriguez*, 1984-NMCA-034, 101 N.M. 192, 679 P.2d 1290)), *with Muqqddin*, 2012-NMSC-029, ¶¶ 38-39 ("[W]e reject any further use of *Rodriguez* as persuasive authority. . . . [T]he original common-law purpose of burglary, the protection of the security of habitation or a similar space, is still relevant when construing our modern burglary statute. . . . [B]urglary has a greater purpose than merely protecting property.").

{21} But *Muqqddin* cited with approval Judge Apodaca's special concurrence in *Sanchez*. *See Muqqddin*, 2012-NMSC-029, ¶ 49. And while Judge Apodaca expressed misgivings about the majority's expansive interpretation of Section 30-16-3, he nonetheless agreed that both convictions could be upheld because there was sufficient evidence for the jury to conclude that the defendants burglarized protected spaces,

even under a more limited, traditional construction of the burglary statute. *Sanchez*, 1987-NMCA-035, ¶¶ 15-16 (Apodaca, J., specially concurring).

{22}   We conclude that Defendant's conduct falls within the scope of the burglary statute, even under the narrower interpretation announced by *Muqqddin*. Unlike *Baca* and *Archuleta*, the "unauthorized" aspect of Defendant's entry is not a violation of a retail store's unenforced members-only policy, *Baca*, 2014-NMCA-087, ¶ 3, or a piece of paper telling the defendant that he was no longer welcome to enter an area otherwise enjoyed by the public at large, *Archuleta*, 2015-NMCA-037, ¶ 3. Here, the "unauthorized entry" at issue is not Defendant's entry of the *motel lobby* with intent to commit a theft, but rather his accomplice's entry into the *clerk's office* adjacent to the lobby. The clerk's office was designed to remain separate from the public lobby area: the only way to enter was through a locked door or over a chest-high counter that could be completely shut with a retractable barrier. This design notified the public that the clerk's office was accessible only to motel employees. In short, it is reasonable to "expect some protection from unauthorized intrusions" into the clerk's area. *Muqqddin*, 2012-NMSC-029, ¶ 45 (internal quotation marks and citation omitted). It follows, then, that climbing the chest-high counter and jimmying open the cash drawer violated the occupant's reasonable expectation of privacy. Accordingly, the entry was "the type of entry the Legislature intended Section 30-16-3 to deter."

*Muqqddin*, 2012-NMSC-029, ¶ 59.

**2.      The Clerk's Area is an "Other Structure" Under Section 30-16-3.**

{23}      Defendant argues that even if his accomplice's entry into the clerk's office was unauthorized, the space falls within the ambit of *Muqqddin*'s holding that Section 30-16-3 does not protect component parts of the list of enumerated structures that are protected from burglary. *See Muqqddin*, 2012-NMSC-029, ¶ 37. Put differently, Defendant argues that even if the motel as a whole is a structure that can be burglarized, *Muqqddin* precludes a burglary conviction for an unauthorized entry into a component part of a larger, protected structure.

{24}      This argument reads too much into *Muqqddin*. Defendant's interpretation of *Muqqddin* would essentially render Section 30-16-3 superfluous: every "whole" is composed of parts; were we to accept Defendant's argument, every entry without authorization into an interior space contained within a location protected by Section 30-16-3 (such as the passenger compartment of a vehicle) with intent to commit a felony would not constitute burglary. Rather, *Muqqddin* qualified Section 30-16-3 so that liability does not stem from whether a structure can be characterized as a "part" of a greater whole, but rather whether the structure is "some sort of enclosure." *Muqqddin*, 2012-NMSC-029, ¶ 44 (citing *State v. Foulenfont*, 1995-NMCA-028, 119 N.M. 788, 895 P.2d 1329). And in order for something to have some sort of

13

enclosure, it must be "capable of completely confining people and their property." *Foulenfont*, 1995-NMCA-028, ¶ 11.

{25}    Here, the clerk's office was capable of completely confining the motel clerk, his desk, and the locked drawer containing cash: a locked door prevented access from the lobby, and the opening above the chest-high counter could be closed and secured. In short, the enclosure's physical characteristics were such "that a reasonable person would expect some protection from unauthorized intrusions." *Muqqddin*, 2012-NMSC-029, ¶ 45 (internal quotation marks and citation omitted).

{26}    In *State v. Holt*, 2015-NMCA-073, 352 P.3d 702, *cert. granted*, 2015-NMCERT-___ (No. 35,298, June 19, 2015), we held that the space between a window screen and a closed window on a home was a protected space under *Muqqddin*. *Holt*, 2015-NMCA-037, ¶ 20 (citing *Muqqddin*, 2012-NMSC-029, ¶ 45). We reasoned that a window screen was "a real, non-imaginary device [that] provided protection against intrusion and enclosed protected space." *Holt*, 2015-NMCA-073, ¶ 22 (citing *Muqqddin*, 2012-NMSC-029, ¶ 45). In a dissent, Judge Kennedy characterized the majority's holding as "expanding the boundary of [prohibited] space[s] . . . in a way [*Muqqddin*] took pains to criticize." *Holt*, 2015-NMCA-073, ¶ 27 (Kennedy, J., dissenting). Judge Kennedy was concerned that the majority had revived a statutory interpretation that gave rise to burglary liability for even the slightest intrusion into

14

the "outermost plane of [a] structure," an approach *Muqqddin* rejected. *Holt*, 2015-NMCA-073, ¶¶ 27, 29 (Kennedy, J., dissenting).

{27} We hold that the clerk's office is a protected space under the burglary statute. The crucial question in determining whether an area is protected is whether or not its physical characteristics create an "[e]nclosure [that] puts the public on notice." *Muqqddin*, 2012-NMSC-029, ¶ 45; *see Holt*, 2015-NMCA-073, ¶ 22. The chest-high counter separating the public hotel lobby from the otherwise sealed-off clerk's area was sufficient to create such an enclosure and put the public on notice that it was off-limits. To be sure, had Defendant merely placed his hand on the counter while intending to commit a felony inside the clerk's area, Judge Kennedy's dissent might require us to reverse Defendant's conviction. But this case does not involve a "penetration of mere outer perimeters." *Holt*, 2015-NMCA-073, ¶¶ 29, 34 (Kennedy, J., dissenting).

{28} The fact that the clerk did not close the barrier above the countertop does not alter the outcome of this case. As our Supreme Court noted in *Muqqddin*, the Legislature rejected "oddities" in the common law requiring courts to determine whether a property owner had "invite[d]" the burglary. *See Muqqddin*, 2012-NMSC-029, ¶ 18 (internal quotation marks and citation omitted). In *Muqqddin*, the defendant's burglary conviction is not based on "happenstance" distinctions based on

15

the way he accessed the clerk's office; any unauthorized entry into the separate and non-public clerk's area with intent to commit a theft or other felony would constitute a burglary. *Id.* ¶ 56. Indeed, the *Muqqddin* court expressly noted that its holding would not bar prosecution for the unauthorized entry through "such things as an open window. A window, by its nature, creates an opening in an enclosure[.]" *Id.* ¶ 48. Thus, the question is whether the structure as a whole is protected, not the manner by which a person accesses it without authorization.

{29}	We acknowledge that in *Baca*, we "question[ed] the continuing validity of other burglary cases decided before *Muqqddin* that recognize a distinction between areas of a retail store that are considered open or closed to the public." 2014-NMCA-087, ¶ 11. But *Baca* held out the possibility that "areas of retail stores . . . may have privacy or security interests distinct from general shopping areas." *Id.* We think the conduct underlying Defendant's conviction and the physical attributes of the clerk's area implicates the interests identified in *Baca* such that we must uphold Defendant's convictions.

{30}	Defendant's final argument is that because *Muqqddin* applied the rule of lenity to resolve the question of whether the "structure" in Section 30-16-3 applied to a gas tank attached to a van and the wheel well of a car, we must likewise apply the rule of lenity to construe the word "structure" not to include the motel clerk's office. But the

rule of lenity applies only to "situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute." *State v. Edmondson*, 1991-NMCA-069, ¶ 12, 112 N.M. 654, 818 P.2d 855 (internal quotation marks and citation omitted). Here, we do not think that *Muqqddin*'s interpretation of Section 30-16-3 mandates the application of the rule of lenity to every case involving a structure not specifically enumerated in Section 30-16-3. Rather, the rule of lenity applies when it remains unclear whether Section 30-16-3 prohibits a particular act or protects a given structure.

{31}     As we have explained above, Defendant's conduct is the sort of "evil that our society is attempting to deter" with the burglary statute: "the invasion of privacy and the victim's feeling of being personally violated." *Muqqddin*, 2012-NMSC-029, ¶ 42. Defendant's entry into the separate, secured clerk's office is a harmful entry that is readily distinguishable from petty theft or shoplifting because a reasonable person would have understood the clerk's office to be closed to access by the public. And the motel clerk's office is an enclosed space, *see id.* ¶ 44, that a reasonable person would understand to be protected from outside intrusions. *Id.* ¶ 45. Insofar as *Sanchez* can be read to allow a defendant to be convicted for unauthorized entries that do not implicate a property owner's privacy interests and right of habitation (i.e., the right

17

to exclude others), there is no dispute that *Muqqddin* repudiated *Sanchez*. But we need not apply *Sanchez*'s expansive definition of the term "unauthorized entry" and "structure" to uphold Defendant's burglary conviction in this case.

**B.      Sufficient Evidence Was Adduced at Trial for a Rational Jury to Convict Defendant of Conspiracy to Commit Burglary**

{32}      Defendant argues that his burglary and conspiracy convictions must be vacated because the evidence at trial showed that an "unidentified second individual crawled over the counter into the area that held the cash box. [Defendant] remained at all times in the public lobby area." In other words, Defendant argues that even if the unknown man committed a burglary, there is insufficient evidence that Defendant conspired to commit the burglary.

{33}      The district court instructed the jury that in order to convict Defendant of conspiracy, it had to find beyond a reasonable doubt that

1.      [D]efendant and another person by words or acts agreed together to commit Burglary;

2.      [D]efendant and the other person intended to commit Burglary; [and]

3.      This happened in New Mexico on or about the 1st day of October, 2012.

*See also* UJI 14-2810 (setting out elements of conspiracy).

{34}      The trial record contains substantial evidence from which the jury could infer

18

that Defendant had entered into a conspiratorial agreement with the unidentified male to commit the burglary. First, Defendant created the opportunity for his co-conspirator to commit the crime by asking the motel clerk to reset the internet router. He did so by implying that he was a motel guest, which he was not, and that his wife was experiencing difficulty connecting to the internet using the motel's wireless network. Second, the surveillance video presented by the State at trial showed the unidentified man entering the motel lobby immediately after the clerk left his office and easily locating the cash drawer behind the desk. Third, once the unidentified man removed the cash from the cash drawer, the surveillance footage showed Defendant hurriedly departing the lobby shortly behind and walking in the same direction away from the motel as the unidentified man. Viewed in a light most favorable to the jury's verdict, a rational trier of fact could infer from this evidence that Defendant (a former motel employee) knew the location of the cash drawer and the fact that resetting the wireless router would require the clerk to be away from the office for a sufficient amount of time to create an opportunity to steal the cash and escape without notice. Given the timing of the burglary, a rational jury could infer that Defendant and his accomplice agreed and intended to commit the crime of burglary. Accordingly, sufficient evidence supports Defendant's conviction for conspiracy to commit burglary.

# CONCLUSION

{35}	The district court did not err in denying Defendant's motion for a directed verdict on his burglary and conspiracy to commit burglary charges. We affirm.

{36}	**IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

_____
**M. MONICA ZAMORA, Judge**

20