This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                          **NO. A-1-CA-35554**

**WILLIAM JAMES VALENCIA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**T. Glenn Ellington, District Judge**

Hector H. Balderas, Attorney General
Maha Khoury, Assistant Attorney General
Santa Fe, NM

for Appellee

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Chief Judge.**

{1}     Defendant appeals his convictions for burglary, conspiracy, and possession of burglary tools. Specifically, he challenges the denial of his motion for directed verdict, challenges the accuracy of one of the jury instructions, and advances a claim of cumulative error. For the reasons that follow, we affirm.

**BACKGROUND**

{2}     Defendant's convictions stem from an incident in December 2014, when police were dispatched to a house on Velarde Street in Santa Fe, New Mexico in response to a report of a burglary in progress. In view of the applicable standards, we summarize the relevant procedural history and evidence as follows.

{3}     Gene and Margaret Montoya (collectively, the Montoyas) testified that they called 911 after seeing a strange vehicle parked in the driveway of the neighboring house, the doors of the house open, and two men taking objects from inside the house and loading them into the vehicle. The Montoyas testified that no one had lived in that house for years, but they kept an eye on it, and in the past the owner had let them know when others were allowed on the property. The Montoyas provided a description of the vehicle and the license plate number to the police, and at trial, they identified photographs of the house and the vehicle, described various items that they saw being carried away, and identified Defendant as one of the men who was removing items from the house.

{4}     Several officers promptly responded to the scene, including Officer Bustamante. Officer Bustamante testified that she located the vehicle described in the dispatch. She initiated a traffic stop and spoke with Defendant, who was driving, and also identified the passenger, Bradley Deets. Officer Bustamante further testified that she saw numerous objects in the back of the vehicle.

{5}     Officer Lucero testified that he spoke with the Montoyas, took their statements, and then took Margaret to the location of the traffic stop, where she identified Defendant as one of the men she had seen at the house.

{6}     Officer Anaya testified that he heard the dispatch, saw the vehicle pass in the other direction, turned around, and stopped behind Officer Bustamante. Officer Anaya then spoke with Defendant, who explained that he was giving Deets a ride when they saw the house in question. Believing the house was abandoned and that anything located there was free to take, Defendant stated that he had parked the vehicle and that he and Deets gathered metal objects that they found both outdoors and inside the residence and loaded them into the vehicle to sell for scrap. Officer Anaya testified that Deets similarly stated that he and Defendant had taken items from the house, that he had helped Defendant load the items into the vehicle, and that Defendant had indicated that he was planning to sell the metal. Finally, Officer Anaya testified that pliers and a knife were found on Defendant's person, and a crowbar and another set of pliers were found under a floor mat in the vehicle. Officer Anaya indicated that he

3

thought Defendant had used these tools to gain entry into the house, which was consistent with pry marks observed on the door frame.

**{7}** After the State rested, Defendant moved for a directed verdict, challenging the sufficiency of the evidence. The district court concluded that there was sufficient direct or indirect evidence to establish all of the essential elements and denied the motion.

**{8}** The defense then presented its own evidence. First, Defendant called his girlfriend, Lucille Gallegos, who testified that the vehicle Defendant was driving was hers, that she had given the police consent to search the vehicle, and that a number of items found in the car belonged to her.

**{9}** Defendant testified next. During the course of his testimony, Defendant admitted that he had taken items from outside the house, believing them to be trash and intending to sell them as scrap. Defendant further admitted that he did not have permission to enter the house, and he said that only Deets had entered and taken items from inside.

**{10}** Finally, Deets testified. He denied that he and Defendant had discussed burglarizing the house. He also asserted that neither of them had entered the house, and that he had not seen Defendant take any items from the property.

**{11}** After closing arguments, the district court instructed the jury, which ultimately returned guilty verdicts on all three counts. This appeal followed.

## DISCUSSION

## Sufficiency of the Evidence

**{12}** Defendant's first issue on appeal challenges the district court's denial of his motion for directed verdict at the close of the State's case.

**{13}** Because Defendant proceeded to present his own evidence after the district court denied his motion, the issue is not properly before us as stated. *See State v. Baldwin*, 2001-NMCA-063, ¶ 30, 130 N.M. 705, 30 P.3d 394 ("It is well-settled that a defendant who presents evidence waives his claim that the evidence at the close of the [s]tate's case was insufficient for submission to the jury." (alteration, internal quotation marks, and citation omitted)). Nevertheless, we proceed to construe the issue as a challenge to the sufficiency of the evidence, in relation to which we consider not only the evidence presented by the State in its case-in-chief, but also the evidence subsequently presented by the defense. *See State v. Aranda*, 1980-NMCA-130, ¶ 4, 94 N.M. 784, 617 P.2d 173 ("[W]hen a motion for a directed verdict is made and denied at the close of the [s]tate's case-in-chief, and [the] defendant thereafter introduces evidence, . . . the sufficiency of the evidence is determined by a review of all of the evidence, and not just the evidence at the time the motion was made.").

**{14}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v.*

5

*Mestas*, 2016-NMCA-047, ¶ 8, 370 P.3d 805 (internal quotation marks and citation omitted). "[W]e view the evidence as a whole and indulge all reasonable inferences in favor of the jury's verdict while at the same time asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (emphasis, alteration, internal quotation marks, and citation omitted).

{15}    To support a conviction for burglary, the State was required to prove that in New Mexico on or about December 20, 2014, Defendant entered a structure without authorization with the intent to commit a theft inside. *See* NMSA 1978, § 30-16-3 (1971) ("Burglary consists of the unauthorized entry of any . . . structure . . . with the intent to commit any . . . theft therein."); UJI 14-1630 NMRA (setting forth the essential elements of burglary).

{16}    Applying the standard of review described above, evidence was presented that satisfied each of the requisite elements of burglary. The testimony of the Montoyas established that Defendant entered a structure in New Mexico on the specified date. Defendant admitted that he lacked authorization to enter. This evidence, which included the testimony of the Montoyas that they observed Defendant taking items from inside the residence and placing them into the vehicle, the testimony of the officers concerning their observations, and Defendant's statements that he intended to sell the items, supplies sufficient evidence of the requisite intent. *See generally State v. Sosa*, 2000-NMSC-036, ¶ 9, 129 N.M. 767, 14 P.3d 32 ("Intent is subjective

6

and is almost always inferred from other facts in the case, as it is rarely established by direct evidence." (internal quotation marks and citation omitted)); *State v. Reynolds*, 1982-NMSC-091, ¶ 5, 98 N.M. 527, 650 P.2d 811 (observing that "burglarious intent can be reasonably and justifiably inferred from the unauthorized entry alone" (internal quotation marks and citation omitted)). We note that Defendant's stated belief that the property was abandoned does not require a different result. *See generally Lopez v. State*, 1980-NMSC-050, ¶ 4, 94 N.M. 341, 610 P.2d 745 (observing, in relation to the prosecution of theft, that it is not necessary that the property taken be owned by a certain person and noting that "[i]t is only necessary that the property did not belong to the defendant"); *State v. Stefani*, 2006-NMCA-073, ¶ 39, 139 N.M. 719, 137 P.3d 659 (recognizing that "the jury [is] free to believe or disbelieve [the defendant's] theory").

{**17**}     To support a conviction for conspiracy, the State was required to establish that in New Mexico on or about December 20, 2014, Defendant and another person by words or acts agreed together to commit burglary, and that Defendant and another person intended to commit burglary. *See* NMSA 1978, § 30-28-2(A) (1979) ("Conspiracy consists of knowingly combining with another for the purpose of committing a felony within or without this state."); UJI 14-2810 NMRA (uniform jury instruction for conspiracy).

**{18}** Once again, the eyewitness testimony of the Montoyas that Defendant and Deets took items from within the house on the date in question, together with the officers' testimony describing both Defendant's and Deets' admissions to taking items with the stated intention of selling them, supplies adequate support for all of the essential elements. *See, e.g.*, *Mestas*, 2016-NMCA-047, ¶ 34 (upholding the conviction for conspiracy based on evidence that the defendant perpetrated a burglary together with an accomplice, thereby supporting the requisite inferences of agreement and intent); *State v. Gonzales*, 2008-NMCA-146, ¶ 11, 145 N.M. 110, 194 P.3d 725 (holding that surveillance footage showing the defendant and several other people burglarizing a structure "presented strong circumstantial evidence to support [the] conclusion that [the d]efendant had, in fact, agreed with at least one of them to commit the burglar[y]"); *see generally State v. Estrada*, 2016-NMCA-066, ¶ 39, 377 P.3d 476 (observing that "conspiracies may be (and often are) proven with circumstantial evidence"), *cert. denied*, ___-NMCERT-___ (No. S-1-SC-35927, June 29, 2016).

**{19}** Finally, to support a conviction for possession of burglary tools, it was incumbent upon the State to prove that in New Mexico on or about December 20, 2014, Defendant had in his possession a Leatherman and/or pliers and/or knife, which are designed for or commonly used in the commission of a burglary, and that Defendant intended that these tools be used for the purposes of committing a burglary. *See* NMSA 1978, § 30-16-5 (1963) (defining the offense of possession of burglary

8

tools as "having in the person's possession a device or instrumentality designed or commonly used for the commission of burglary and under circumstances evincing an intent to use the same in the commission of burglary"); UJI 14-1633 NMRA (setting forth the essential elements of possession of burglary tools).

{20} The previously described evidence of Defendant's commission of the offense of burglary, together with the officers' discovery of the Leatherman, pliers, and knife on Defendant's person, as well as the crowbar under the vehicle mat and the pry marks observed on the door frame of the house, supplies adequate support for all of the requisites of possession of burglary tools. *See, e.g.*, *State v. Barragan*, 2001-NMCA-086, ¶ 27, 131 N.M. 281, 34 P.3d 1157 (upholding a conviction for possession of burglary tools, based on evidence that the defendant pried open a door and committed a larceny once inside), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110; *see generally State v. McGee*, 2004-NMCA-014, ¶ 15, 135 N.M. 73, 84 P.3d 690 ("Circumstantial evidence, like direct evidence, will support a jury's finding of a specific intent."). Once again, we note that Defendant's assertion that he did not intend to use the tools to commit a burglary does not compel a different result. *See State v. Foxen*, 2001-NMCA-061, ¶ 17, 130 N.M. 670, 29 P.3d 1071 (observing that the jury is not obligated to believe the defendant's testimony).

{21} In closing, we acknowledge that Defendant presented conflicting evidence at trial from which a different conclusion might have been reached. However,

"[c]ontrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "Only the jury may resolve factual discrepancies arising from conflicting evidence." *State v. Apodaca*, 1994-NMSC-121, ¶ 5, 118 N.M. 762, 887 P.2d 756. "The reviewing court does not weigh the evidence or substitute its judgment for that of the fact finder as long as there is sufficient evidence to support the verdict." *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789, *abrogated on other grounds by Kersey v. Hatch*, 2010-NMSC-020, ¶ 17, 148 N.M. 381, 237 P.3d 683. We therefore reject Defendant's challenge to the sufficiency of the evidence.

**Jury Instructions**

{22}     In conjunction with his challenge to the sufficiency of the evidence, Defendant contends that the jury was not properly instructed on the offense of burglary. To the extent that this represents a conceptually separate issue that was not preserved below, we review for fundamental error. *See State v. Cabezuela*, 2015-NMSC-016, ¶ 37, 350 P.3d 1145 ("We review unpreserved issues regarding jury instructions for fundamental error.").

{23}     Defendant's challenge is based on the portion of the burglary instruction given to the jury that specified that "the least entry constitutes an intrusion." The applicable uniform jury instruction instead provides that "the least intrusion constitutes an

10

entry[.]" UJI 14-1630. As is apparent, the words "entry" and "intrusion" were switched in the jury instruction given at trial.

{24} We have previously held that the failure of a jury instruction to precisely track relevant statutory language does not necessarily constitute error, particularly if substantially synonymous terminology is utilized. *State v. Rubio*, 1999-NMCA-018, ¶¶ 6-7, 126 N.M. 579, 973 P.2d 256. In this case, the transposed words "entry" and "intrusion" are substantially synonymous. *See Black's Law Dictionary* 900 (9th ed. 2009) (defining "intrusion" as "entering without permission"). Under the circumstances, the minor departure from the language of the uniform instruction cannot be said to have misstated the law or caused jury confusion. *See generally State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (observing that when reviewing a jury instruction for fundamental error, we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction, and further explaining that an instruction that gives the juror an inaccurate rendition of the relevant law may confuse or misdirect the jury).

{25} We further note that there was no genuine dispute in this case with respect to the portion of the jury instruction that has been challenged. That language is clearly designed to clarify that the extent of the intrusion is not a material consideration, so long as any unauthorized entry has been established. In this case, although a conflict existed between the testimony of eyewitnesses who indicated that they saw Defendant

11

entering the house on the one hand, and Defendant's and Deets' testimony that Defendant never entered the house on the other, the actual extent of entry was never at issue. Consequently, the deviation from the language of the uniform jury instruction was inconsequential to the jury's determination.

{26} In summary, therefore, although the instruction given to the jury in this case does not correspond precisely with the language employed in the uniform jury instruction, we conclude that the minor deviation does not constitute fundamental error.

**Cumulative Error**

{27} Lastly, Defendant contends that the district court's errors taken together resulted in cumulative error. "The doctrine of cumulative error requires reversal of a defendant's conviction[s] when the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial." *State v. Woodward*, 1995-NMSC-074, ¶ 59, 121 N.M. 1, 908 P.2d 231 (internal quotation marks and citation omitted), *aff'd in part, rev'd in part sub nom on other grounds by Woodward v. Williams*, 263 F.3d 1135, 1143 (10th Cir. 2001). The cumulative error doctrine is strictly applied and may not be successfully invoked if the record as a whole demonstrates that the defendant received a fair trial. *State v. Trujillo*, 2002-NMSC-005, ¶ 63, 131 N.M. 709, 42 P.3d 814. When we find that no error occurred, "there is no cumulative error." *State v. Aragon*, 1999-NMCA-060, ¶ 19, 127 N.M. 393, 981

12

P.2d 1211. Because we have rejected Defendant's assertions of error in the proceedings before the district court, we conclude that the doctrine of cumulative error does not apply in the present case.

**CONCLUSION**

{28}    For the reasons stated, we affirm.

{29}    **IT IS SO ORDERED.**


_____

**LINDA M. VANZI, Chief Judge**


**WE CONCUR:**


_____
**JULIE J. VARGAS, Judge**


_____
**HENRY M. BOHNHOFF, Judge**